# 25-1505-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JOHN GALANIS, JARED GALANIS, GARY HIRST,
DEREK GALANIS, YMER SHAHINI, GAVIN HAMELS,

*Defendants,*

JASON GALANIS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT

DAVID TOUGER
PELUSO & TOUGER, LLP
*Attorneys for Defendant-Appellant*
70 Lafayette Street, Suite 2
New York, New York 10013
(212) 608-1234

COUNSEL PRESS (800) 4-APPEAL • (382753)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..…..ii
STATEMENT OF JURISDICTION…………………………………….…1
ISSUES PRESENTED……………………..…………………………..…1
STATEMENT OF THE FACTS…………………………………….…..1
SUMMARY OF ARGUMENT………………………………………………6
ARGUMENT……………………………………………………………6

I. THE DISTRICT COURT IMPROPERLY DENIED THE APPELLANT'S MOTION FOR RETURN OF THE FUNDS SEZED HEREIN……….……6

CONCLUSION…………………………………………………………23
CERTIFICATE OF COMPLIANCE……………………………………...25

# TABLE OF AUTHORITIES

## Cases

*Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994)……………………………….9

*Soviero v. United States*, 967 F.2d 791, 792–93 (2d Cir. 1992)………..………….9

*United States v. Dusenbery*, 534 U.S. 161, 167–68 (2002)……………………….10

*United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999)……..…………….10

*Cardona-Sandoval v. United States*, 518 F.3d 13, 16 (1st Cir. 2008)……………10

*United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014)…………………..13

*United States v. Torres*, 703 F.3d 194, 204 (2d Cir. 2012)……... ……………….13

*United States v. Bodouva*, 853 F.3d 76, 78–79 (2d Cir. 2017))………..…………13

*United States v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011)…….……………..13

*Lavin v. United States*, 299 F.3d 123, 127–28 (2d Cir. 2002)…….……………...13

*United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013)………14 & 15

*United States v. Trotter*, 912 F.2d 964, 966 (8th Cir. 1990)……………………….15

*Schick v. Reed*, 419 U.S. 256, 266–67 (1974)…………………….……16, 20 & 21

*Biddle v. Perovich*, 274 U.S. 480, 486 (1927)………………………..16, 18 & 19

*Paroline v. United States*, 572 U.S. 434, 443–44 (2014)………………………16

*United States v. Esformes*, 60 F.4th 621 (11th Cir. 2023)………………………...17

*Nelson v. Colorado*, 581 U.S. 128 (2017)……………………………………...17

*Horne v. Department of Agriculture*, 576 U.S. 350, 361 (2015)………..……..18

*United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833)………………………..19

*Knote v. United States*, 95 U.S. 149 (1877)…………………………………….…21

*Fordham v. Georgia Department of Administrative Services*, No. 23-11214, 2023 WL 5747709 (11th Cir. Sept. 6, 2023)…………………………………………....22

**Statutes**

28 U.S.C. § 1291…………………………………………………………………...1

18 U.S.C. § 371……………………………………………………………...…1 & 4

15 U.S.C. §§ 78j(b) and 78ff…………………………………………………..1 & 4

17 C.F.R. § 240.10b-5…………………………………………………………1 & 4

15 U.S.C. §§ 80b-6 and 80b-17………………………………………………..1 & 4

18 U.S.C. § 981(a)(1)(C)………………………………………………………1 & 4

28 U.S.C. § 2461………………………………………………………………1 & 4

Rule 41(g)……………………………………………7, 9, 10, 15, 20, 23 & 24

18 U.S.C. § 3663A…………………………………………………………………..11

21 U.S.C. § 853(i)(1)…………………………………………………………….…13

28 C.F.R. § 9.1(b)(2)…………………………………………………………..13

## JURISDICTIONAL STATEMENT

On June 11, 2025, in the United States District Court for the Southern District of New York, the Honorable P. Kevin Castel, United States District Judge, entered his decision denying Appellant's motion for return of Forfeited Funds. Appellant filed a timely Notice of Appeal with this Court on June 13, 2025. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291, which provides that, "the courts of appeals… shall have jurisdiction of appeals from all final decisions of the district courts of the United States…"

## ISSUES PRESENTED

1. Whether the District Court erred by not granting Appellant's motion for remittance of funds?

## STATEMENT OF THE CASE

### I. Procedural Posture

On January 31, 2020, Appellant pleaded guilty pursuant to a plea agreement to conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, conspiracy to commit investment adviser fraud, in violation of 15 U.S.C. §§ 80b-6 and 80b-17, and conspiracy to commit investment adviser fraud, in violation of 18 U.S.C. § 371. Pursuant to the plea agreement, Appellant agreed to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461,

property derived from proceeds traceable to the commission of the offenses as well as certain specific property. In addition, Appellant agreed to pay restitution in an amount ordered by the Court.

On September 24, 2020, the Sentencing Court (Hon. P. Kevin Castel) sentenced Appellant to 189 months' imprisonment and three years of supervised release. In addition, as a result of Appellant's conviction, the Sentencing Court waived the fine and ordered restitution, forfeiture, and a special assessment. Specifically, the Sentencing Court ordered restitution in an amount that was later amended. On January 25, 2022, the Sentencing Court entered an amended final order of restitution directing Appellant to pay restitution in the total amount of $80,459,773.43 with specific amounts owed to enumerated victims.

On November 20, 2020, the Sentencing Court entered a final order of forfeiture which imposed a money judgment in the amount of $80,869,117.10 as well as the forfeiture of all right, title, and interest in the following specific property: (i) $2,170,000 representing the sale proceeds of 1920 Bel Air Road, Los Angeles, California 90077, and (ii) $11,000,000 representing the sale proceeds of 260 West Broadway, Unit 1, New York, New York 10013. The Forfeiture Order provided that, "[a]ll right, title, and interest in the Specific Property is hereby forfeited and vested in the United States of America and shall be disposed of according to law." Because of a lien on the West Broadway Property and other expenses, the net

forfeiture proceeds that the United States obtained pursuant to the Forfeiture Order amounted to approximately $2,170,196.34 (the "Forfeiture Proceeds").

On or about December 23, 2024, the Department of Justice's Money Laundering and Asset Recovery Section ("MLARS") granted the Government's request for restoration in this case. On January 21, 2025, in accordance with the restoration process, the United States Marshals Service (the "USMS") transferred the Forfeiture Proceeds totaling approximately $2,170,196.34 to the Clerk of Court for the Southern District of New York for the purpose of applying the funds toward the Appellant's restitution obligation.

On March 28, 2025, the President of the United States issued the Commutation Order, granting an immediate commutation of Appellant's sentence "to time served with no further fines, restitution, probation or other conditions."

On April 8, 2025, Appellant, filed a motion for the return of payments made pursuant to the Sentencing Court's orders of forfeiture and restitution and then files a supplemental letter on May 1, 2025. The Government responded on May 15, 2025. On May 21, 2025, Appellant filed his response. On June 11, 2025, the Sentencing Court issued its decision denying Appellant's motion for return of funds and on June 13, 2025, Appellant filed his Notice of Appeal to this Court.

Appellant now appeals the denial of his motion for return of funds.

## II. Factual Background

The Appellant, Jason Galanis was initially indicted in two fraud schemes—the Gerova Scheme and the Wakpamni Scheme—through which Appellant and his co-defendants were alleged to have engaged in market manipulation and securities fraud.

On January 31, 2020, Appellant pleaded guilty pursuant to a plea agreement to conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, conspiracy to commit investment adviser fraud, in violation of 15 U.S.C. §§ 80b-6 and 80b-17, and conspiracy to commit investment adviser fraud, in violation of 18 U.S.C. § 371. Pursuant to the plea agreement, Appellant agreed to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461, property derived from proceeds traceable to the commission of the offenses as well as certain specific property. In addition, Appellant agreed to pay restitution in an amount ordered by the Court.

On September 24, 2020, the Court sentenced Appellant to 189 months' imprisonment and three years of supervised release. In addition, as a result of Appellant's conviction, the Court waived the fine and ordered restitution, forfeiture, and a special assessment. Specifically, the Court ordered restitution in an amount that was later amended. On January 25, 2022, the Court entered an amended final order of restitution directing Appellant to pay restitution in the total

amount of $80,459,773.43 with specific amounts owed to enumerated victims. (Dkt. 578 ("Restitution Order")).

On November 20, 2020, the Court entered a final order of forfeiture which imposed a money judgment in the amount of $80,869,117.10 as well as the forfeiture of all right, title, and interest in the following specific property: (i) $2,170,000 representing the sale proceeds of 1920 Bel Air Road, Los Angeles, California 90077, and (ii) $11,000,000 representing the sale proceeds of 260 West Broadway, Unit 1, New York, New York 10013. (Dkt. 566 ("Forfeiture Order")). The Forfeiture Order provides that, "[a]ll right, title, and interest in the Specific Property is hereby forfeited and vested in the United States of America and shall be disposed of according to law." Because of a lien on the West Broadway Property and other expenses, the net forfeiture proceeds that the United States obtained pursuant to the Forfeiture Order amounted to approximately $2,170,196.34 (the "Forfeiture Proceeds").

On or about December 23, 2024, the Department of Justice's Money Laundering and Asset Recovery Section ("MLARS") granted the Government's request for restoration in this case. On January 21, 2025, in accordance with the restoration process, the United States Marshals Service (the "USMS") transferred the Forfeiture Proceeds totaling approximately $2,170,196.34 to the Clerk of Court for the Southern District of New York for the purpose of applying the funds toward

the Appellant's restitution obligation. These funds remain undistributed at this time.

On March 28, 2025, the President of the United States issued the Commutation Order, granting an immediate commutation of Appellant's sentence "to time served with no further fines, restitution, probation or other conditions." Appellant now seeks the return of any and all funds held by the Clerk of Court.

## SUMMARY OF ARGUMENT

The funds seized by the Government herein were seized for the sole purpose of making restitution to the alleged victims of the fraud charged herein. Those funds were never delivered to the alleged victims herein. Therefore, since the President's Commutation order specifically bars any further restitution payments, the funds seized for that exact purpose must be returned to the Appellant.

Accordingly, this Court should reverse the Sentencing Court's denial of Appellant's motion for return of funds and Order that all funds seized from the Appellant be returned to him.

## ARGUMENT

### I. THE DISTRICT COURT IMPROPERLY DENIED THE APPELLANT'S MOTION FOR RETURN OF THE FUNDS SEZED HEREIN

There are unchallenged facts at bar here, as admitted by the Government. First, is that the funds forfeited herein were for the sole purpose of restitution. Second, that restitution was never made. Third, is the President of the United States acting

within his powers granted to him by the Constitution and supported by all judicial decisions exercised his power to commute Mr. Galanis' sentence and included in that Order is the clear language that no further restitution payments are required. Thus, it is Mr. Galanis' position that since the money taken from Mr. Galanis was for the sole purpose of restitution and now that purpose has been extinguished, the money should be returned to him under Rule 41(g). The Government's unsupportable position is that they should be able to just keep it even though there is no legal reason to do so and they should just get a financial windfall.

The Sentencing Court's decision denying the Appellant's motion is based almost entirely on the argument that once funds are rightfully seized by the Government pursuant to an agreed upon forfeiture Order the Government has the right to do as they wish with those funds. This is true in cases where the funds have not been designated to be used for a specific cause such as restitution, as they were here. Here, the Government specifically states in its letter-brief filed below, that on or about December 23, 2024, the Department of Justice Money Laundering and Asset Recovery Section ("MLARS") approved the use of the forfeiture proceeds "for restoration to victims of Galanis's crimes." Thus, these funds as intended from the time of the Appellant's sentencing, were properly designated for restitution. Most importantly, the restitution that they were designated for was never made prior to the President's Commutation Order which specifically states that no further

restitution payments should be made. Thus, these funds cannot be used for this purpose anymore and should be returned to the Appellant.

To accept the Lower Court's framing would be to collapse the distinction between process and outcome—to treat the intent to pay as though payment had occurred. But asset seizure is not satisfaction. Custody is not compliance. And possession is not legal execution. The Lower Court's decision is not just, most respectfully, mistaken—it retroactively blesses an administrative act that was never legally completed. This Court must note that the Government in its papers below never argues that the restitution has been paid. To the contrary they freely admit that it has not. They do, however, admit that that "the Forfeiture Proceeds were transferred to the Clerk of Court for the purpose of applying the funds toward the Galanis restitution obligation." These efforts are not procedural curiosities—they are admissions of intent. At no point did the Government argue that the funds were simply Government property untethered to restitution. Instead, it consistently treated them as conditionally held for restitution payment. **These are not throwaway lines.** They amount to an admission that restitution has not been executed. In the same breath, however, the Government insisted below that the Presidential Commutation—stating that Galanis shall have "no further…restitution"—does not apply to these allocated but undisbursed funds. That is illogical. A pending restitution—especially one lacking legal predicate

steps and issued without proper authorizations—is, by definition, future in character and therefore falls squarely within the plain terms of the Presidential Order.

The Government has no legitimate interest in retaining the funds. The Government currently has zero claim of right to money that it cannot lawfully use for its stated purpose. The Government identifies no other lawful purpose for which it could use these funds. It cannot retain them as forfeiture, because the forfeiture was designated for restitution. It cannot pay them as restitution, because the Presidential Commutation forbids further restitution. The Government is left with no colorable claim to the funds.

It must be noted by this Court that the Appellant's motion did not request that the Lower Court modify the forfeiture order. Rather, it sought the relief authorized by Rule 41(g): return of property unlawfully retained after the sole basis for that retention—restitution—has been extinguished by a valid act of executive clemency.

## A. JURISDICTION AND LEGAL STANDARD

Federal courts retain equitable jurisdiction under Rule 41(g) to review post-conviction motions for return of property. See *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994); *Soviero v. United States*, 967 F.2d 791, 792–93 (2d Cir. 1992). A

motion may proceed where the Government's continued possession of property lacks a valid statutory, penal, or equitable basis. See *United States v. Dusenbery*, 534 U.S. 161, 167–68 (2002); *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999). Furthermore, as clearly stated in *Chambers*, "the burden shifts to the Government when the criminal proceedings have terminated. At that point, the person from whom the property was seized is presumed to have a right to its return, and the Government must demonstrate that it has a legitimate reason to retain the property. *Id.; see also Edwards,* 903 F.2d at 274 (after termination of criminal proceedings, the Government must show "that it had a legitimate reason not to return the property to the person from whom it was seized"). The Government may meet this burden by demonstrating "a cognizable claim of ownership or right to possession" adverse to that of the movant. *Chambers* at 377. Here, the Government cannot meet this burden as the obligation has been extinguished by the clear language of the March 20, 2025, Presidential Commutation.

Thus, since the Government does not retain a legitimate interest in the subject property it must be returned. See *Cardona-Sandoval v. United States*, 518 F.3d 13, 16 (1st Cir. 2008).

### B. FACTUAL BACKGROUND

On January 31, 2020, Mr. Galanis entered a guilty plea pursuant to a written agreement with the United States Attorney's Office for the Southern District of New York. On that same day, the Court entered a consent preliminary forfeiture order. A final restitution order followed on November 4, 2020, and a final forfeiture order was entered on November 20, 2020.

As set forth in Paragraphs 8 through 12 of the plea agreement, Mr. Galanis consented to the forfeiture of specific assets—principally, proceeds from the sale of California property (purchased years before the charged conduct in the Wakpamni bond matter) held through a trust structure—as a means of satisfying the financial obligations of his judgment. The forfeiture was not presented or understood as a separate criminal penalty; it was explicitly tied to the restitution obligation under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A.

The Government, by its own admission, did not initiate the administrative restoration process with the DOJ's Money Laundering and Asset Recovery Section ("MLARS") until February 2021—months after both restitution and forfeiture had been finalized. No evidence has been presented that MLARS ever approved the request. The U.S. Marshals Service transferred the forfeited funds on January 21, 2025— a day after Inauguration Day—more than eight years after the funds were

initially surrendered pursuant to a Court-approved stipulation and order entered on December 8, 2016, which resolved all third-party claims to the California property proceeds. The transfer, recorded in a docket entry dated January 21, 2025, characterized the assets as "forfeited funds," and appears to reflect the first documented movement of the proceeds in the intervening years. Subsequently, on March 20, 2025, the President of the United States granted Mr. Galanis a commutation stating that he "shall owe **no further fines, restitution, or other financial obligations related to his conviction**." The funds at issue remain in federal custody, undisbursed and unapplied and thus, should be returned as requested.

## C. THE GOVERNMENT'S FRAMEWORK REQUIRES RETURN OF THE FUNDS

The Government's own submissions below—specifically its July 16, 2021 letter — set forth a clear and binding legal framework governing the treatment of forfeited assets. Under that framework, the continued retention of the funds at issue is unlawful following the commutation of Mr. Galanis's sentence and the extinguishment of all his restitution obligations.

First, the Government acknowledges that forfeiture and restitution are distinct legal remedies that serve different purposes. As stated in its letter and supported by case law, restitution is designed to compensate victims, while forfeiture operates as a

punitive measure by which the Government seizes assets derived from criminal conduct. See *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014); *United States v. Torres*, 703 F.3d 194, 204 (2d Cir. 2012). Thus, the existence or non-existence of a restitution order has no bearing on the enforceability of a final order of forfeiture—unless the Government seeks to apply those funds toward restitution through the authorized administrative process, which is exactly what happened herein.

Second, the Government expressly states that neither courts nor defendants have authority to direct the application of forfeited funds to restitution (citing *United States v. Bodouva*, 853 F.3d 76, 78–79 (2d Cir. 2017)). That power rests solely with the Department of Justice, and more specifically, with the Chief of the Money Laundering and Asset Recovery Section ("MLARS"), acting under delegated authority from the Attorney General. See *United States v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011); *Lavin v. United States*, 299 F.3d 123, 127–28 (2d Cir. 2002); 21 U.S.C. § 853(i)(1); 28 C.F.R. § 9.1(b)(2).

Third, and critically, the Government acknowledges that the process of restoration—through which forfeited funds may be applied to restitution—is entirely discretionary and requires the continued legal enforceability of the restitution order. In other words, once restitution is no longer operative, the basis

for restoration is extinguished as well. See *United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013).

Here, the Government did not submit a restoration request to MLARS until February 2021. As of July 2021, the request remained pending. No evidence exists that MLARS ever approved that request. Subsequently, the President of the United States granted Mr. Galanis executive clemency, expressly providing that Appellant "shall owe no further fines, restitution, or other financial obligations related to his conviction." With the restitution order extinguished and the restoration process incomplete, there is no longer any statutory or administrative basis for the Government to hold these funds. It must be remembered that the funds in question were received solely for the purpose of restitution, which was never effectuated by the Government.

Although the Final Order of Forfeiture vested "all right, title, and interest" in the United States and declared that the Government had "clear title" to the specific property, the Order also required that the forfeited assets "be disposed of according to law." Following the Presidential Commutation there is no legal basis for the Clerk of the Court to retain the funds.

Respectfully, the Government cannot assert a legal entitlement to retain assets under a process it admits is time-bound, discretionary, and now unavailable. The

forfeited funds at issue are no longer tethered to any valid penal or remedial purpose. DOJ's own policy framework reinforces the constitutional infirmity of continued retention: once restitution has been extinguished, forfeited funds held for that purpose must be returned, or else their continued custody violates both administrative procedure and due process. Thus, under the Government's own framework, their continued retention is improper and must be corrected through the relief afforded by Rule 41(g).

## D. THE FINALITY OF FORFEITURE CANNOT OVERRIDE CLEMENCY

As stated, earlier, The Lower Court's reliance on the legal theory that because the funds were judicially forfeited, the finality of the forfeiture order insulates its retention is a miscalculation. While title to forfeited property may pass to the United States, its **continued retention** must serve a lawful and active penal or remedial purpose. See *United States v. Trotter*, 912 F.2d 964, 966 (8th Cir. 1990) (forfeiture is punitive, not remedial); *United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013) (courts lack equitable power over forfeited assets). Again, it must remembered that these funds according to the plea agreement were collected for restitution specifically **not** for a forfeiture to general funds.

Here, the punishment has been commuted. Forfeiture as a penalty cannot survive once the sentence and its monetary consequences have been vacated by executive

clemency. Retaining forfeited funds under these circumstances **converts a penal tool into a revenue windfall**, violating both due process and the Fifth Amendment.

In the alternative, even assuming that the Chief of the Money Laundering and Asset Recovery Section ("MLARS") did approve the restoration of seized or forfeited assets for victim restitution prior to the issuance of the commutation, that administrative approval does not override the President's subsequent Executive Grant of Clemency. The Supreme Court has long recognized that the President's clemency power under Article II, Section 2 of the Constitution is broad and not subject to curtailment by other branches or by internal Department of Justice procedures. See *Schick v. Reed*, 419 U.S. 256, 266–67 (1974); *Biddle v. Perovich*, 274 U.S. 480, 486 (1927).

Here, the Executive Grant of Clemency states that Appellant's sentence is commuted to time served "with no further fines, restitution, probation, or other conditions." Because restitution is undeniably part of the sentence under federal law, see *Paroline v. United States*, 572 U.S. 434, 443–44 (2014), the explicit inclusion of "no further … restitution" precludes any lingering obligation or payment. Even if MLARS had fully authorized restitution disbursements from seized funds prior to the commutation, it could only be effective if the funds were actually disbursed to the victims before the Presidential clemency took effect. A

partial or incomplete administrative step cannot persist once the superior constitutional authority of a Presidential Commutation has negated all restitution obligations.

Furthermore, federal courts have consistently enforced the exact language of a commutation order. Compare *United States v. Esformes*, 60 F.4th 621 (11th Cir. 2023) (where the grant of clemency explicitly reserved restitution, courts deemed it still enforceable) with situations in which commutations state no further restitution, thereby extinguishing the obligation entirely. The Government's internal processes cannot nullify the clearly stated terms of the Executive Grant of Clemency.

### E. CONTINUED RETENTION VIOLATES DUE PROCESS AND THE TAKINGS CLAUSE

The Supreme Court has held that the Government may not retain seized funds once the legal basis for their confiscation has been eliminated. In *Nelson v. Colorado*, 581 U.S. 128 (2017), the Court made clear that due process prohibits the continued detention of property absent a valid conviction or enforceable judgment. Writing for the majority, Justice Ginsburg stated: *"Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for monetary exactions." Id. at 136.*

That principle applies with full force here. The restitution order has been extinguished by a Presidential Commutation, and no administrative restoration was

completed. The indefinite retention of the funds—without disbursement, judicial directive, or pending legal obligation—violates procedural due process. It also constitutes a taking without just compensation in violation of the Fifth Amendment. See *Horne v. Department of Agriculture*, 576 U.S. 350, 361 (2015) ("A physical appropriation of property… is a per se taking.").

## F. LEGAL CONSEQUENCES OF THE PRESIDENTIAL COMMUTATION AND ITS EXPRESS FINANCIAL TERMS

The language of the Presidential Commutation is explicit and unqualified. It provides that Mr. Galanis "shall owe no further fines, restitution, or other financial obligations." This provision is not merely precatory—it is legally dispositive. Courts and commentators alike distinguish between clemency orders that are silent as to financial penalties and those that expressly extinguish them. See *Biddle v. Perovich*, 274 U.S. 480, 486 (1927). Where a commutation is silent, courts may presume only the custodial sentence is remitted. But where, as here, the President has plainly included financial obligations in the clemency grant, that language must be given full effect.

This is not a situation where ambiguity in the clemency terms allows the Government to retain possession. The Executive Branch chose to speak clearly and with presumed knowledge that the funds had been segregated for restitution but not yet distributed and thus, specifically included the term "further". The inclusion of

restitution and fines within the clemency instrument constitutes a deliberate and binding exercise of constitutional authority. As the Supreme Court held in *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833), a pardon or commutation "exempts the individual from the punishment the law inflicts." That exemption, when phrased in such categorical terms, must be honored.

The Commutation Order uses the phrase "no further fines, restitution, or other financial obligations." The use of the word "further" is legally significant and warrants focused analysis. In clemency jurisprudence, "further" is not surplusage; it acts as a temporal and functional delimiter, distinguishing between obligations that have already been executed—such as amounts paid to victims, judgments fully satisfied, or fines collected—and those that remain pending, unexecuted, or in custodial limbo. The term serves to clarify the scope of the commutation by extinguishing all remaining obligations not yet fulfilled at the time of its issuance. See *Biddle v. Perovich*, 274 U.S. 480, 486 (1927) (clemency extinguishes the "part of the sentence yet to be served").

In this case, the funds at issue have not been disbursed to victims, not credited against any live restitution balance, and not applied through the DOJ's restoration process. The funds remain in the possession of the United States Government specifically directed for restitution but never paid. That makes it, by definition, a

"further" obligation—unexecuted at the time of the commutation, and thus within the express reach of the President's grant of clemency. In this posture, continued retention of the funds is not merely unauthorized—it is contrary to the plain language of the President's order and the settled principles governing the effect of clemency.

The March 20, 2025, Presidential Commutation not only granted clemency to the Appellant, but also expressly directed that the Attorney General "cause the foregoing to be carried into full force and effect." That language is not ceremonial—it reflects a constitutionally grounded duty to ensure that the clemency grant is implemented in practice, including its express extinguishment of "any further fines, restitution, or other financial obligations."

This Court most respectfully, has the obligation to ensure the President's Order is fully respected. In *Schick v. Reed*, 419 U.S. 256, 266 (1974), the Supreme Court recognized that the President's clemency power includes authority to determine "the manner in which the sentence shall be carried into execution." The Attorney General's direction to "cause" clemency to take effect necessarily includes eliminating enforcement efforts by the Southern District of New York United States Attorney's Office (SDNY) that clemency has rendered moot. In this context, a Rule 41(g) order directing the return of funds no longer supported by restitution

would not conflict with DOJ policy—it would facilitate the final execution of a constitutionally binding act of clemency and the SDNY should be so directed.

The Government below cited in their papers *Knote v. United States*, 95 U.S. 149 (1877), for the proposition that clemency cannot reach forfeited funds already vested in the Treasury. But *Knote* involved post-Civil War confiscations where the funds had long been absorbed into the general fund of the Treasury. In essence the funds had reached their final destination and reached their ultimate designated destination. That is entirely different then the facts herein. Here the funds have not reached their final designated destination and there is at this time no final designation to reach due to the Commutation Order's specific and unequivocal language. Thus, the Government's reliance on this case is misplaced. The money in this case has not been already paid forward for its designated purpose it remains segregated in the Clerk's control—earmarked for restitution (an obligation that no longer exists). No act of Congress has appropriated these funds for another use. The Government does not cite a single modern case holding that segregated forfeiture funds, undisbursed and in limbo, are immune from judicial order once their stated purpose has been extinguished.

Moreover, *Knote* predates the development of the modern restitution and forfeiture framework by more than a century. It is no answer to the plain command of *Schick v. Reed*, 419 U.S. 256 (1974), which confirms that the President may commute

"any part" of a sentence, including financial penalties. If a forfeiture judgment is part of the sentence—as DOJ itself argues when it wants to enforce one—then it is equally and necessarily subject to the clemency power.

The Government's invocation of *Fordham v. Georgia Department of Administrative Services*, No. 23-11214, 2023 WL 5747709 (11th Cir. Sept. 6, 2023), borders on misdirection. In *Fordham*, the restitution funds had already been paid to victims. The case turned on the simple, uncontested fact that "the district court transferred all restitution monies to the victims," and those funds were no longer in the hands of the Government. Here, not a single dollar has been distributed. The funds remain under federal control, undisbursed, and held solely for a restitution order that was extinguished by Presidential Commutation. To equate *Fordham*—where restitution was a *fait accompli*—with this case, where restitution never occurred and now not required, is not just inapposite—it's legally incoherent. The Government conflates completed relief with undone intention. That distinction makes all the difference.

The funds at issue were not disbursed to victims, nor credited in any way. They are held by the Clerk, frozen in place, awaiting direction. In every functional and legal sense, the funds continue to remain subject to future restitution—and therefore fall squarely within the ambit of "no further… restitution." Simply the funds were seized for a restitutional purpose, they were not disbursed and now that

restitutional purpose has been eradicated, thus the funds must be returned to Mr. Galanis because there is no recognized reason to give the funds to anyone else.

## G. IN CONCLUSION

As a matter of constitutional law and settled precedent, this commutation terminated all penal consequences associated with the conviction. No sentencing obligations remain. No forfeiture proceedings are pending. Furthermore, the restitution order that once underpinned the Government's interest in the forfeited funds is now legally void. The law requires that the burden in such cases shifts to the Government to demonstrate a legitimate basis for continued possession. Based on the facts of this case it cannot, as the Government cannot pay the funds to victims as restitution, because the Presidential Commutation forbids "further...restitution." The Government cannot retain the funds as a punitive forfeiture, because the funds were specifically designated for victim restoration, not for Government retention. The Government has identified no other lawful purpose for which it may use the funds. Thus, the Government cannot meet its required burden of proof and the funds should be returned to the Appellant.

With both elements of Rule 41 met, (1) conclusion of criminal proceedings (which is indisputable herein due to the Presidential Commutation), and (2) the lack of Government interest in the property at issue (now indisputable due to the law and

unequivocable language of the Presidential Commutation), Rule 41(g) relief is not merely available—it is compelled by the equities and the law.

## H. RELIEF REQUESTED

For the reasons stated above, and in view of the extinguished restitution obligation Appellant respectfully requests that this Court reverse the Lower Court's decision denying Appellant's Motion for Return of Funds and respectfully requests that the Court issue an order directing the immediate return of the $2.17 million in forfeited funds to Appellant.

Dated: October 20, 2025
New York, New York

Respectfully submitted,

______________________
David Touger

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because this brief contains 5194 words, excluding the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt font size of Times New Roman.

Dated: New York, New York
October 20, 2025

David Touger
Attorney for Appellant Jason Galanis
70 Lafayette Street
New York, New York 10013
(212) 608-1234